UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case No.: 1:26-cv-20126-REID

CARMEN LAIZA THOMPSON
Plaintiff,

v.

ANJELICA RUBIN
Defendant.

_____/

DEFENDANT'S BRIEF REGARDING ENFORCEMENT
OF THE PARTIES' SETTLEMENT AGREEMENT

Pursuant to the Court's paperless Order of July 23, 2026, Defendant, Anjelica Rubin, submits this brief addressing *Albert v. Am. Family Ins. Co.*, 739 F. App'x 607 (11th Cir. 2018), and *Turner v. Rocket Mortgage, LLC*, No. 22-cv-23028, 2023 WL 5162619 (S.D. Fla. Aug. 11, 2023).

I. Background

The parties conducted three settlement conferences. At the first, they reached agreement in principle, subject to reducing the terms to a signed written agreement; Plaintiff's counsel prepared the initial draft, which included signature blocks for both parties. A single sentence in Paragraph 7, concerning the content and signatory of a reference letter, remained unresolved and required a second conference, at which Plaintiff specified the language she required. A third conference was held on July 22, 2026, to finalize that language; Defendant agreed to Plaintiff's requested sentence, and Plaintiff's counsel inserted it into the settlement agreement immediately afterward. Every other term had already been negotiated and resolved.

On May 13, 2026, the Court's law clerk directed the parties to "submit the parties' settlement agreement... for final approval by Judge Reid," and on May 20, 2026 the Court administratively

1

closed this action "without prejudice to the parties to submit a final executed settlement agreement to the Court for final approval" — confirming throughout that the Court contemplated approving the parties' actual executed agreement. Immediately after the parties finalized the reference-letter language on July 22, Plaintiff's counsel advised for the first time that Plaintiff would not sign, and instead submitted a proposed order enforcing a settlement described as having been reached at the initial, May 8, 2026 conference.

Late in the afternoon of July 29, 2026, Plaintiff's counsel advised the undersigned that Plaintiff relented and finally agreed to execute the Settlement Agreement that the parties actually negotiated (attached hereto as Exhibit A), resolving the dispute over execution that gave rise to the Court's July 23 Order.  Defendant (without power on July 29, 2026) executed that same agreement on July 30, 2026.  What remains is which instrument the Court should approve: the executed Settlement Agreement now signed by Plaintiff and Defendant, or Plaintiff's earlier proposed order—drafted before she signed anything—which rests on the May 8 conference and an unspecified interim draft rather than the final, executed agreement. Defendant respectfully submits it should be the former, and addresses *Albert* and *Turner* below both because the Court's Order requires it and because both cases confirm that result.

## II. Albert and Turner Confirm That the Actual Negotiated — Now Executed — Document Should Govern

Because Plaintiff has now signed, the question the Court's Order poses—whether a settlement may be enforced without Plaintiff's signature—is largely moot. But both cases independently confirm that the instrument to be approved is the parties' actual negotiated document, not a generic substitute order, which is precisely why Defendant addresses them here.

2

In *Albert*, the court enforced an unsigned settlement because the parties' attorneys had expressly agreed to its final terms by e-mail over several days following mediation, and the client's own attorney had apparent authority under Georgia law to bind him absent notice of any limitation. 739 F. App'x at 609–10. The court enforced *the final Settlement Agreement and General Release itself*, because "letters or documents prepared by attorneys which memorialize the terms of the agreement reached will suffice" absent a signed writing. *Id. Albert*'s agency rationale has no application here, where both principals participated directly and no term is disputed. More importantly, unlike *Albert*, the parties' own agreement makes execution the operative act of assent: it may not be changed "except in a writing... signed by all Parties" (¶ 8); it may be "executed in... counterparts... with the same effect as if all Parties had signed the same document" (¶ 10); each party warrants she is "authorized to execute this Agreement" (¶ 11); the release runs "to the date this Agreement is executed" (¶ 4); and the signature page recites the parties "executed this Agreement... intending to be bound by it." Execution was always the parties' own chosen mechanism of assent—now satisfied.

In *Turner*, the court likewise held that "[s]ettlements may exist and be enforced even though they are not signed," 2023 WL 5162619, at *3, but the remedy it ordered was that "[p]laintiff shall execute the Settlement Agreement," *id.* at *5—compelling signature of the actual negotiated document, not adoption of a generic order. *Turner* also rejected the plaintiff's attempt to inject an undisclosed "essential term" after the fact, holding that "objective manifestations," not subjective afterthoughts, govern. *Id.* at *1–*4. Here, by contrast, no party ever disputed a term; Plaintiff's own counsel drafted the agreement, including the exact reference-letter sentence she demanded, and the May 13 e-mail and May 20 Order confirm the Court always contemplated a signed writing.

There is even less reason here than in *Turner* to depart from the negotiated writing—and Plaintiff's own signature now removes any reason to do so at all.

### III. The Signed Settlement Agreement—Not Plaintiff's Earlier Proposed Order—Should Be Approved

Plaintiff's proposed order, submitted before she signed anything, does not omit the parties' substantive terms outright; it incorporates them by reference to "the draft written Settlement Agreement and Limited Release exchanged between counsel after" the May 8 conference—without attaching or specifying which of several drafts exchanged over three conferences it means. That ambiguity is precisely what Paragraph 8 of the Agreement was written to foreclose by requiring that any change be "in a writing... signed by all Parties and then approved by the Court." It is also no longer necessary to resolve: the executed Settlement Agreement attached hereto is a specific, dated, unambiguous instrument reflecting every term the parties actually negotiated, including the reference-letter language not finalized until July 22, 2026, and fully executed on July 30, 2026. The Court should approve the now fully executed document rather than an order tied to a superseded conference date and an unspecified draft.

### IV. The FLSA Requires the Court to Review and Approve the Actual Executed Settlement

Before approving dismissal of an FLSA claim, a court must scrutinize the actual settlement for fairness. *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982). That review is best performed—and now can be directly performed—on the executed Settlement Agreement itself, consistent with the Court's own May 13 e-mail and May 20 Order, both of which asked for the parties' final executed agreement rather than a proposed judgment.

## V. Conclusion

For these reasons, Defendant respectfully requests that the Court enter an order approving and ratifying the now fully executed Settlement Agreement attached hereto as Exhibit A, and dismissing this action accordingly—consistent with the remedy ordered in *Turner* and the terms enforced in *Albert*—rather than adopt Plaintiff's proposed order, which rests on an earlier, superseded conference date and an unspecified draft rather than the final agreement the parties actually executed.

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed with the Clerk of Court using the CM/ECF system on July 30, 2026, and the foregoing document is being served this day on all counsel or parties of record on the Service List below, via transmission of Notice of Electronic Filing generated by CM/ECF.

_____/s/_____
Kenneth B. Schurr, Esq.
Schurr & Castaneda, P.A.
2030 S. Douglas Road
Suite 105
Coral Gables, FL 33134
Tel.: 305-441-9031
Designated Service E-mail:
kbsservice@schurrlaw.com
counselken@schurrlaw.com

## <u>SERVICE LIST</u>

*Counsel for Plaintiff*

**Brian Howard Pollock**
FairLaw Firm
135 San Lorenzo Ave
Suite 770
33146
Coral Gables, FL 33146
305-230-4884
Fax: 305-230-4844
Email: brian@fairlawattorney.com


**Patrick Brooks LaRou**
FairLaw Firm
135 San Lorenzo Avenue
Suite 770
Coral Gables, FL 33146
305-928-4893
Email: brooks@fairlawattorney.com